There are three basic reasons why Pacheco Camacho does not control this case. The first is that intervening Supreme Court authority on statutory construction undermines the validity of the Pacheco Camacho paradigm of going to deference before the rule of lenity. The second is that because this is a multi-year sentence rather than a year and a day, we are concerned with the first sentence of the statute, not the last one, about proration, which Pacheco Camacho dealt with. Third, the pre-1996 offense and sentence were before the regulation went into effect, as the Court stated in the Moreland opinion, which we provided by a Rule 28 letter last week. The methodology from the Supreme Court that has fundamentally changed or undermined the basis of Pacheco Camacho starts with a footnote in Sancir. In Sancir, the agency, the Immigration and Naturalization Service, had a statute and they decided about who could be deported, and they applied it retrospectively. Everything was in place to go ahead and do the chevron, all of the notice and comment, et cetera, to put that into effect. However, what the Supreme Court said is this went beyond what the statute permitted. They said the statute does not address the question of retroactivity. As to retroactivity, it is ambiguous. But before you go to chevron, you apply the traditional canons of statutory construction, the traditional rules of construction, and in that case, the rule was, again, for prospective only application. So as to – and it's a beautiful sentence because a sentence is ambiguous with respect to retroactive application, is construed under our precedent to be unambiguously prospective. There is, for chevron purposes, no ambiguity in such a statute for the agency to resolve. That takes us to Laocao. And Laocao – But there's not a retroactivity argument in this case, is there? That is correct. I'm analogizing to – Retroactivity pushes pretty hard in Sancir toward the construction of that statute. That is correct. And what – I'm drawing the analogy to the rule of lenity, which I believe is the similar – same type of rule of construction that applies sooner. Well, is it, though? You know – That's what Laocao tells us, I think. Laocao and Martinez, the next two. Again, hitting the footnotes, footnote eight tells us that the – in construing whether the agency should apply rule of lenity, the Court says, well, it has both criminal and noncriminal applications. Therefore, if there were ambiguity, we would be resolving that ambiguity in favor of the rule of lenity, even though it's in an agency case. No reference to agency deference. It seems to me, though, that those cases on the footnotes are referring to sort of an as-applied construction of the statute. In other words, it applies to a particular situation. I think Chevron and Brown and Williamson and all those cases talk about strict statutory construction in the abstract. They use all the tools at hand to formulate your view, the Court's view, of whether or not you – the statute is ambiguous before you even get down to an application. Yes. I think that's what Chevron says. You use the traditional tools. With these glosses and Martinez, we get to actual text saying that in that case it was constitutional avoidance for the due process problem of an indefinite detention of Muriel Cubans. Now, I understand the logic chain that you're drawing, but do you have a case that says all of that in one, or do you have – do we have to tie it from case to case to case to get to your conclusion? I think that Martinez puts the nail on it. You could rely on – you could cite Martinez where Justice Scalia is explaining, wait a second, we're not using this rule of constitutional avoidance as a sneaky way of deciding a constitutional question. We're determining what Congress meant. And to the same extent, what happened in this case, or what should have happened, is that you look to what the – look to what the statute actually says and apply the rule of lenity if there is ambiguity before you get to any type of agency deference. Just as – because what we're doing with the rule of lenity, first of all, it's a separation of powers question. If we're not sure that the legislature wanted that degree of punishment, we don't give it to the Department of Justice to decide that question. It's a question for the Congress would not want to risk having unnecessary incarceration, wouldn't want to have the – so it's exactly like Clark versus Martinez in saying that you apply the rule of lenity to trump the Chevron doctrine under those circumstances. And it's not – in general, it always operates that way. But it does operate that way where the question is directly addressed in the statute, which it is – BOP is not saying we have the discretion to reduce the maximum amount. We're saying this is what the statutory maximum amount is, 47, not 54. If you have a prisoner claiming 540 days on a 10-year sentence. Yes. And that's your claim, isn't it? Yes. Okay. When does he serve the credit time, or does he serve the credit time? The whole point of good time credit is it's in lieu of actual service. So if he's sentenced to 10 years, before the 10 years is up, under your theory, he gets 540 days off, right? Yes, sir. And he doesn't even get – it doesn't even trigger his supervised release? This is just free time? No. It – under 3624A. Excuse me? He was sentenced to 10 years. Yes. His supervised release under 3624A starts at the term of imprisonment is actual time. Can you read the statute? No. The sentence, that's what the sentence says. I believe it says at the expiration of the term of imprisonment, which is the time actually served minus the credits. So the day that he – It doesn't say anything about the credit at all in the sentence. Actually, 3624A does. It says 10 years and then supervised release. The judgment? Yes, that's what the judgment says. Well, that's what he's serving. So what does he get, 540 days free time? He gets – yes. He gets – it's his reward for good behavior in prison. No control at all? Oh, absolutely. They have complete control. If he's misbehaved, if he has misbehaved, there's no question that the BOP has very broad discretion to say, hey, you misbehaved, you – See what you're doing is you're asking for release time on a compound basis. You want release time for time that's released. No, I don't think so. Well, you can't get release time if you do 54 – 50 – the statute says 54 days. Yes, sir. So one year you get 54 days. Now, do you do the 54 days now? Does it count in the next year for getting another 54 days? If – that is the way the Bureau of Prisons is computing it, and I don't think it makes any sense. The way it should be done is the person serves 311 days. Within 15 days thereafter, under ER 2829, where they talk about how they impose the rules, you make a calculation. Did the person misbehave? There's not 311 days in a year. There's 365 days in a year. If he hasn't misbehaved, then he gets credit. So under either system, credit is time that's counted against the sentence that is not in jail. It's just a question of how much, not a question of whether. So we're both talking about actual credit for time rather than actual time imprisoned. All right. And the statute says the 54 days is for each year served. Each year of the term of imprisonment, I believe. No, the statute says for each year served. That's out of the statute. Each year of the term of imprisonment. Throughout the statute, they're referring to term of imprisonment. They say at the end of each year of the term of imprisonment. How many ends of a year of imprisonment are in a 10-year sentence? I would say 10 has to be there. The way you do that is at each level, you give that 54 days and you adjust the release date accordingly instead of using the time. Because you're going to give 54 days for the first year and at the end of the first year, and then you're going to compound that again because it's part of the second year of service. Not if what you're defining each year of the term of imprisonment, if there's 10 of them. If there's 10 of them and you divide. No, each year of service is 365 days and 366 in leap year. The years of a term of imprisonment, there's 10 of them. And if there's 10 years of imprisonment and you say that there's 54 days for each of those terms, it comes out to 311 days rather than 319 as the Bureau of Prisons is calculating it. The question is whether the statute is dealing with term of imprisonment or time served. Well, the prisoner doesn't start a year of sentence and at the end of the year get his 54 days credit, take a holiday from the prison and then come back and start serving his second year. No. So you are counting the 54-day credit given at the end of the first year as part of service in the second year. I don't believe so. I believe that's what's bothering the Bureau of Prisons. I believe that our chart on page 180 of the excerpt of record demonstrates, I believe, how it is calculated to get 10 different periods of 54 days credit towards each year of the term of imprisonment. And that gets to the second part of why Pacheco-Camacho doesn't control, and that is that in the first sentence where they say, greater than a term of imprisonment, term of imprisonment of up to life, and then the statement about at the end of each year of the term of imprisonment. If those are the sentence imposed, and they concededly are in the first two, it's got to be for the third part. Again, Martinez, Clark v. Martinez, talking about the statutory language meaning the same thing throughout the rule of construction, that if it's in the same sentence, of course they should mean the same thing, and it's a perfectly doable way of construing it as the Moreland Court did and the Williams Court and the White Court in looking at this exact same question. The Pacheco-Camacho Court, again, they did it. It seems that at the end of the day you're just arguing Pacheco-Camacho was wrongly decided. I do think it was wrongly decided. I don't mean to be a mistake about that, but I realize that you would be helped, and that's why I'm arguing. Getting back to your first point on Pacheco-Camacho, we said in Pacheco-Camacho that in such a case the regulation gives the public sufficient I'm sorry, I'm in the wrong sense. The rule of lenity, however, does not prevent an agency from resolving statutory ambiguity through a valid regulation. Doesn't that just completely cut against your argument unless you're saying Pacheco-Camacho has been effectively overruled by the Supreme Court? And I don't think it has to be directly overruled, but I think its mode of reasoning, mode of analysis and reasoning, have definitely been. They've got the cart before the horse. And I believe it's very clear from Sancier, Martinez, and Leocal that you apply the traditional rules of statutory construction, including rule of lenity, before you get to Chevron deference. And that gets us to exactly why the judge did not in Pacheco-Camacho did not resolve intrastatutory consistency, because given that our holding hinges on the deference due to the BOP rather than a fresh interpretation of the statute, there's no need to resolve intrastatutory consistency. That's exactly backwards. The fresh look is the first look in Chevron to say what do the rules of statutory construction require under these circumstances. And that did not happen here. If you look at the analysis in the Williams and Moreland and White district courts, they each look at basic black-letter rules of statutory construction and come out to a result saying term of imprisonment only means one thing. It's used hundreds of times throughout the criminal code, throughout the statute authorizing the guidelines, in the guidelines themselves. It always means sentence imposed. How could it mean something different in this one small situation? It makes no sense, and it's inconsistent with the legislative history set out in Moreland. The last point of difference is one that, again, comes from the Moreland decision, and that is that the regulation was enacted in 1997. The record reflects that the offense in this case occurred in 1995, that, therefore, the retrospective application of the regulation would be another distinguishing factor from Pacheco-Camacho. And if I could reserve the remaining time. Correct. You bet. Good morning, Your Honors. My name is Ken Baumann. I'm an assistant United States attorney for the District of Oregon. And if you'll notice, my colleague, Mr. Casey, wrote the brief and handled this below. He was unavailable, and I agreed to do this argument for him. It's with trepidation that I raise the first issue in this case, which is jurisdiction. And the reason it's with trepidation is because, as I view all the taxpayers' money being spent litigating this issue for myself, Mr. Sady being here today, and I pull these cases from around the country, and I'm sure the lawyers on both sides are being paid by the taxpayers, but jurisdiction is one of those issues that can never be waived. So I want to review, as I reviewed Mr. Casey's brief and Mr. Sady's brief the other day, the facts in the record of this case and why I submit to you that there is no longer jurisdiction. The petitioner in this case, and I use petitioner because this is a 2241 proceeding, habeas corpus, received a 10-year sentence in 1995. He was at FCI Sheridan when he filed a petition for writ of habeas corpus in December of 2002. At that time, he named as a respondent, and the only respondent in this case, Warden Daniels. He was in the District of Oregon. The warden was in the District of Oregon. The district court in Oregon had jurisdiction. On January 9, 2003, he was transferred to FCI, Federal Correctional Institution, at Lompoc. On August 18, 2004, was the initial hearing, and the reason I bring that up in this context is there's a statement made by Mr. Casey at the end of that where he says, well, the jurisdictional argument, we gave up on that. What he was submitting was the jurisdictional argument about a new warden being in charge of the respondent in this case, and I'm going to get to the situation as it now exists in a minute. Obviously, the case was lost. Notice of appeal was filed on November 5, 2003. The petitioner was released from the custody of the Bureau of Prisons, and that's important because some of the cases that are cited by the parties are from a time when the Parole Commission existed and not from the sentencing guidelines, and as we all know, the Parole Commission, your sentence, you were serving that sentence whether it was in prison or on the street until the sentence was completely served. The last brief in this matter was filed in April of 2004. On June 28, 2004, the Supreme Court decided Rumsfeld v. Padilla, and in that case, and I will submit to you because we've been sloppy with 2241s over the years, extending jurisdiction everywhere, the Supreme Court specifically found you've got to name and sue your custodian if you're going to bring a 2241 and you must file it in the district where you're located. Padilla doesn't necessarily get you as far as you need to get. That is to say, Padilla says you've got to name your current custodian. Correct. But Padilla doesn't say what happens if after you've filed your petition properly naming your current custodian, the imprisoning authority changes your custodian. Correct. By your theory, it sounds as though every time you're changed from one prison to the next, you've got to go in and amend your complaint. Isn't that right? Isn't that your theory? No, and I'll get there in a minute, but I'll also deal with Rule 23 of the Federal Rules of Appellate Procedure, which says just that. As we know from Johnson v. The United States, they specifically found in the Supreme Court that in guideline sentence cases, you're done when you're released from prison. The situation as it now exists is the petitioner is in Alaska. He's serving a supervised release term. He has not named his custodian if, in fact, there is one. You say if, in fact, there is one? Well, I'm not sure who the custodian is when you're serving a supervised release term. Who is controlling you? It's either the court in Alaska or it's a parole and probation officer who goes to the court in Alaska. So you join the probation officer and send the case to Alaska? I think that it has to be refiled as a 2241 in Alaska. This case is over. Well, then you are saying if you transfer a prisoner from one state to the next and you have a different warden, you can't substitute one warden for the other? That's not rule 23. Well, if you can't substitute a probation officer, an officer of the United States government, for a warden who is an officer of the United States government, then that's the rule. I mean, be consistent, please. Your rule 23 says as follows. A person having custody of the prisoner must not transfer custody to another unless the transfer is directed in accordance with this rule. When, upon application, a custodian shows the need for transfer, the court, justice, or judge rendering the decision under review may authorize the transfer and substitute the successor custodian as a party. That didn't happen here. What didn't happen? There was no successor custodian named in this case. As I heard you read the rule. Can't we do it? We're a judge of the court. You could do it. It's not jurisdictional, though. That's the problem. See, it's jurisdictional under Padilla if you've actually named the wrong custodian in the first instance. If you name the right custodian and then you have a later substituted custodian, that's just amendment of the pleadings, which we do all the time here, particularly in 2254 cases. We do it routinely. Especially when they nominate and put in new secretaries of agencies. I know. That's by rule. Yeah, for example, we have 4,000 cases filed against John Ashcroft if we change to Mr. Gonzalez. You did. And so you're saying all those are jurisdictionally deficient. No, I'm not. I'm saying nobody followed the rule in this case. Yeah, but it's not jurisdictional, if you think. Which of these cases says it's jurisdictional? I think Padilla. Padilla doesn't treat the circumstance, does it? Padilla was not transferred, was he? No, he was not in the jurisdiction. The petitioner didn't file against the proper custodian in the first instance in Padilla, right? According to the Supreme Court. And in the right venue. Right. So here's what you have. In this case, you have the right venue, you have the right custodian, jurisdiction attached at that point. Correct. And so what divested the court of jurisdiction? When Andrew Johnson, he finished serving his sentence. Well, that's a different argument. Because now you're talking basically, the argument, that's a mootness argument. That's not a custodian argument. I think that is a custodial argument, and I think it is a mootness argument. Andrew Johnson. Let's suppose the mootness right now. There is a possibility of affecting the terms of supervised release, so the case doesn't moot, right? That's what our case law says. Yes, that is correct. All right. So the mootness argument is gone. What's your best case that says under these circumstances, when you release someone and the custodian is then substituted, that we lose federal court subject matter jurisdiction over this? I think you have to read Padilla and Johnson at the same time. If Padilla says you have to. There's no case that says that precisely. No, correct. All right. But how else do you reconcile Johnson with Padilla? Johnson says when you finish serving your sentence, that's it. It's not like probation. I don't see the correlation or the connection between the two at all. You have to really stretch to make that argument, it seems to me. I don't think you have to stretch to make that argument, but I understand that. Do you think a prisoner in Alaska is free from any restraints whatsoever? No, I don't. I believe he has to file a 2241 in the District of Alaska naming his current proper custodian. That's what I think. And that would be a second successive petition, right? But it would be reaching a different issue. And that's discretionary. I've not seen this court enforce that very often because I have. We do quite often. Well, not in 2241s out of my district. There's another question. But I'd like to move on if I can. Obviously, I haven't convinced you. And that's why I raised that because I was reviewing somebody else's brief, and that occurred to me. The other instance, first of all, I believe that Ms. Camacho has rightly decided and controls this case. But if you read the cases that have been cited by the various parties, it seems like the majority have said the statute's ambiguous. I agreed with Justice Brezier that it's not ambiguous. I understood it. But we must assume, I guess, since Camacho's the law, that it's ambiguous. If it is ambiguous, then Chevron applies. When I was reading the brief yesterday, there was an anomaly that I had to go back and read again, which was in Mr. Casey's brief on page 13, he cites the statute in question here, 18 U.S.C. 3624. And in his citation, it reads differently than all the other citations to the statute that I've read in the cases. And when I decided I'd better find out why, it's because he was citing from a version of the statute in 1993. And in that particular statute, if you look at it, it says that the prisoner in that first sentence where we talk about may shall receive credit, and then it goes on to say of 54 days. In the amendments that the statute that we've been talking about in Camacho, shall disappears, and it now says may receive credit, and it adds of up to 54 days. The statute itself goes on to use shall several other times to say that he shall not get credit if something happens. I understand that change, but I'm not sure that changes his argument. The question is how do you calculate the 54 days that he either shall or may get. Oh, see, I don't have any problem with the statute. I read it the same way Justice Brezier does, or Judge Brezier does. That's Beezer. Beezer. I read it the same way, and I don't have a problem with it, but evidently other courts do have a problem with it. And so if they do have a problem with it, it's ambiguous, and I believe Camacho said it was ambiguous. So I guess we're stuck with that. And so if you go past that and you then get to the Chevron deference, I would submit to you, once you get to the change in the statute from shall to may, the permissive, and from the up to 54 days from the statement of 54 days, Congress obviously intended for the Bureau of Prisons to write rules and regulations about how that statute was to be applied. And if you reach that and it's ambiguous, then the Chevron deference applies, and the Bureau of Prisons has set out the rules and regulations about how the statute should be applied. And under Chevron, it should be given deference. Camacho was right. How do you respond to the argument, leaving our current case law aside, that the rule of lenity is a rule of statutory interpretation, and therefore as we apply Chevron deference and, as explained in Brown and Williamson and subsequent cases, that we have to apply the rule of lenity before we get to Chevron deference at all? I'm not sure that I can articulate the argument that the courts have had, but obviously the courts have decided, and especially you judges, have decided in Camacho that Chevron deference does apply. Well, we said that quite plainly. That's why I said let's leave it down to the side for the moment. I think Mr. Sady's argument is, look, the rule of lenity is just like any other tool of statutory interpretation, and there's no principled reason that we ought to exclude it from the Chevron calculus, if you will. In other words, if the meaning is if the statute is ambiguous, before determining that, we have to use the proper tools of statutory construction. If it's ambiguous, then we use the tools of statutory construction to apply it, and we do all that before we even get to the question of whether the agency's determination and construction is reasonable. Why is the rule of lenity, in your view, different from any other tool of statutory construction? I suppose you have to go back to the rule of lenity and whether this is a criminal statute or not. I would think that would be a starting point in any discussion of that, or are we really talking about the calculation of a service of a sentence? And I suppose that is the basic criteria and difference between the rule of lenity. It is my understanding that the rule of lenity applies in criminal statutes, and I think you have to kick off your discussion from there. Is it a criminal statute or isn't it a criminal statute? I think it appears that the courts have said that it really isn't, otherwise they wouldn't have gone to the Chevron difference, or it is a combination of both, but it is not clearly a criminal statute. I think that is where you have to start your discussion. Whether I can persuade you of that view or not, I am not sure. But if you ask me how do you get there, I think that is where you get to. And obviously there are a lot of judges that have reached that conclusion before me, or else we wouldn't have these cases like the Seventh Circuit recently decided their case and reversed the district court judge. And as I said, I think the statute is clear, but if we have to go to the issue of it's not clear, I would submit the changes in the statute clearly intended that the Bureau of Prisons set out rules and regulations, and their rules and regulations are entitled to deference under Chevron. Thank you. Thank you. Thank you. Rebuttal? If I could start. Last place first. Is this a penal statute? It's in Title 18, Crimes and Criminal Law. That's a pretty good hint. It tells us how long somebody is going to spend in prison. It's another good hint. And the three Supreme Court cases cited on page 28 of the brief I believe establish that good time statutes are indeed penal statutes for purposes of ex post facto for habeas corpus, and I believe inevitably for the purposes of the rule of lenity. You didn't have an opportunity to discuss the White decision from the Seventh Circuit. What's your response to White, even though it's not controlling? What's your response to the logic of White? White basically took the two, conceded all of the rule of intrastatutory consistency arguments, and then decided, well, you can make a different construction of that third usage and basically went straight to Chevron deference. So instead of doing the proper analysis where you would, first of all, apply intrastatutory consistency, which you can easily do in this case, just call it term of imprisonment. You end up with 54 days for the term of every year for the term of imprisonment. Instead, they jumped a step and said, well, whatever they said, it's that way because the Bureau of Prisons said it was. They did not apply the rule of lenity to determine what the statute meant. They did not correctly apply the rule of intrastatutory consistency. I believe that Judge Crabb's decision stands up very well as the right decision in contrast to what occurred in the Seventh Circuit. Basically, as I think Judge Williams stated, what we're seeing is courts giving a cursory nod, I think is the phrase they used, to statutory construction. And what I'm asking the courts to do is rigorously apply the rules of statutory construction to only apply it as far as permitted by Congress. If I could go to the Schall v. May, it's correct that the applicable statute is on page 13 of the government's response brief. Using the Schall, the underlying arguments are much the same. But to the extent there is any change, of course it could not apply retrospectively to the disadvantage of the petitioner because of the ex post facto clause. And it also shows how strong the direction was about Congress was saying how much time you get, not the Bureau of Prisons. On the jurisdictional questions, Padilla, who I believe is New York, and then we had the brig in South Carolina, you didn't apply it at the right place. You had no jurisdiction from the start. Here it's all conceded there's jurisdiction at the start. I believe the cases are very strong saying that the supervised release, wherever it is, whoever judged it is, and in this case,  violation of greater than one year, so he is obviously still affected and would continue to be affected because there's a consecutive state sentence. Where is he incarcerated? Do you know? I do not know. The last point I'd like to make is I'm very concerned about the concern expressed of the windfall that is supposedly occurring for these prisoners. And I would refer the Court to the Moreland opinion at star 9 and 10 where the Court basically says this isn't a windfall, this is an accounting, a bookkeeping problem, and this is how you can solve the bookkeeping problem consistently with the statute saying term of imprisonment. And I hope that at least can provide some reassurance that this is not a situation where they're trying to get something for nothing. It's a situation where they're trying to get the good time that Congress authorized at the full amount. When Senator Biden said 85 percent of the term, he used the 10-year example, 8.5. He had to do 8.72. That's just not right. It's beyond what was authorized by the statute. All we're asking is for it to be correctly accounted. Thank you. I hope you petition Senator Biden to make some changes. The case report will be submitted. We will be in recess for a few moments. We will be followed by an attorney admission in about 15 minutes or so. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Okay. Okay. Okay.  Okay. We are here for a very special event, which is the admission of Kate Dittich to the Ninth Circuit Court of Appeals. Kate was my clerk this year. She did an absolutely spectacular job, and I know she'll make an excellent attorney. She intends to practice here in San Francisco. So with that, raise your right hand. I, state your name. I, Kate Dittich. Member in good standing. Member in good standing. Oops, I'm sorry. Do solemnly swear. Do solemnly swear. That I will conduct myself. That I will conduct myself. As an attorney. As an attorney. And counselor. And counselor. Of this court. Of this court. Uprightly. Uprightly. And according to law. And according to law. And that I will support the Constitution of the United States. And that I will support the Constitution of the United States. Congratulations. Would you introduce your guest to us? Thank you. This is my father, Dean Dittich, my mother, Marlene Dittich, and my friend, Ian Greendale. Thank you. Well, thank you, Kate, again. You've had an excellent year with me. You'll be a wonderful attorney. I'm glad that we could share this occasion with your family and friends. And congratulations. I say congratulations to the parents who got her through law school. Yeah, that's right. Yeah. Any comments from Judge Fletcher? Congratulations all around. Absolutely. As a parent of a law student, I think I'm actually more congratulating the parents. But you too. Thanks for lending her to me for a year. But that will be in recess. Thank you.
judges: Beezer, Thomas, W. Fletcher